579 A.2d 1282

**Joan S. PURCELL and James J. Purcell, Administrators of the Estate of Lindsay Hunter Purcell, Deceased,**

**v.**

**BRYN MAWR HOSPITAL, Marion L. Brown, D.O., Frank J. Manfrey, D.O., and Claudia Brown, R.N.**

**Appeal of BRYN MAWR HOSPITAL.**

Supreme Court of Pennsylvania.

Argued April 2, 1990.

Decided Aug. 9, 1990.

As Amended Oct. 17, 1990.

Henry T. Reath, James J. McCabe, for Byrn Mawr Hosp.

Thomas R. Line, for Purcells.

John F. O'Brien, III, for Frank J. Manfrey.

Donald N. Camhi, for Marion Brown.

Edwin L. Scherlis, for Claudia Brown.

Joseph Neff Ewing, Jr., Lawrence C. Norford, for amicus curiae Hosp. Ass'n of Pa.

Robert B. Hoffman, for amicus curiae Pa. Med. Soc.

Peter J. Hoffman, Richard L. McMonigle, Jr., William J. Mundy, for amicus curiae Pa. Defense Inst.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

We are asked in this appeal to interpret Rule 2179 of our Rules of Civil Procedure dealing with venue in a suit against a corporation. The Rule states:

Rule 2179. Venue

(a) Except as otherwise provided by an Act of Assembly or by subdivision (b) of this rule, a personal action against a corporation or similar entity may be brought in and only in

(1) the county where its registered office or principal place of business is located;

(2) a county where it regularly conducts business;

(3) the county where the cause of action arose; or

(4) a county where a transaction or occurrence took place out of which the cause of action arose.

■ Bryn Mawr Hospital (one of the Appellants) is located in Montgomery County, and the Purcells (Appellees) reside in Chester County. In 1985, the Purcells brought suit in Philadelphia County charging Bryn Mawr and the doctors and nurse (Appellants) with negligence in the death of their infant daughter. Bryn Mawr filed preliminary objections to venue in Philadelphia County. The trial court dismissed the objections on the grounds that venue was proper in Philadelphia County under 2179(a)(2) concluding that Bryn Mawr regularly conducts business there.[1] That court found that the hospital satisfied the requirements for venue on the basis of the following activities:

(a) has contractual affiliations with residency programs of teaching hospitals in Philadelphia, which include Thomas Jefferson University Hospital, Hospital of the University of Pennsylvania, and Temple University Hospital;

(b) recruits and employs *medical* residents from the aforementioned Philadelphia teaching hospitals for the performance of services to patients of Bryn Mawr Hospital in Montgomery County;

(c) purchases goods and services from business(es) in Philadelphia County for the furtherance of its business in Montgomery County;

(d) maintains and pays for advertisements listing the hospital in the Philadelphia County Yellow Pages;

(e) maintains and pays for advertisements in the White Page Telephone Directory of Philadelphia County;

---

1. Pa.R.C.P. 1006(b) directs that venue for personal actions against corporations be controlled by Rule 2179. Although venue and jurisdiction are different legal concepts, we have applied the same procedural tests in order to determine when both exist. *County Construction Company v. Livengood Construction Corporation*, 393 Pa. 39, 142 A.2d 9 (1958). Venue is the place in which a particular action is to be brought and determined; it is a matter for the convenience of the litigants. Jurisdiction refers to the competency of a court to determine controversies of the general class to which the case belongs and to bind the parties by its decision. *Id.*, 142 A.2d at 13. Once preliminary objections are filed to venue, the issue is treated as a jurisdictional matter and subject to Rule 2179. The term "doing business," therefore, has a dual meaning: it is essential to the exercise of jurisdiction and it is essential in determining venue. *Botwinick v. Credit Exchange*, 419 Pa. 65, 69, 213 A.2d 349, 352 (1965).

(f) places continuous advertisements in the Philadelphia Inquirer for distribution primarily in Philadelphia County; and

(g) accepts a portion of its income from residents of Philadelphia County, who, for whatever reason, whether it be advertising, telephone listings or other reasons, chose Bryn Mawr Hospital for treatment.

(Slip opinion, June 27, 1986, pp. 3-4).

Pertinent to the above findings of fact is Bryn Mawr's relationships with Philadelphia's medical schools. Medical students in residency programs also serve rotations in Bryn Mawr Hospital which pays their salaries, fringe benefits, and liability coverage. In the case of Jefferson Medical College, a formal "cooperative academic program of medical education and training." was agreed upon by the parties. Bryn Mawr also accepts patients from outside of Montgomery County but treats them only at the hospital.

On appeal to the Superior Court en banc, and in this appeal, Appellant contends, first, that the activities cited above were only incidental and, second, that since the suit had no substantial relationship to the contacts, venue would not lie in Philadelphia. The trial court and the Superior Court rejected both allegations.[2] Interpreting (a)(2) as not requiring a litigation—relatedness nexus, they also held that the corporate acts within Philadelphia County were of sufficient quality and quantity to enable that county to adjudicate the dispute. *Purcell v. Bryn Mawr Hospital,* 379 Pa.Superior 626, 550 A.2d 1320 (1988).

▮▮▮ Initially, we reiterate our old rule that corporations have a constitutional right to seek a change of venue. *Felts v. Delaware, Lackawanna and Western Railroad, et al,* 195 Pa. 21, 45 A. 493 (1900). Pa.R.C.P. 1006(d)(1) vests the trial court with considerable discretion in determining whether or not to grant a petition for change of venue, and the standard of review is one of abuse of discretion. Only

**2.** Bryn Mawr is joined in this appeal by two amici: the Pennsylvania Medical Society and the Montgomery County Medical Society.

in such a case will the order be disturbed. *Walker v. Ohio River Company,* 416 Pa. 149, 205 A.2d 43 (1964). *Cf. New v. Robinson–Howchin Optical Company,* 357 Pa. 47, 49, 53 A.2d 79, 80 (1947). The applicant bears the burden of proving that a change of venue is necessary, while a plaintiff generally is given the choice of forum so long as the requirements of personal and subject matter jurisdiction are satisfied.

The statutory scheme established by Rule 2179 enables suitors to bring a cause of action against corporations on the four different grounds noted above. Under the facts of this case, subsections (a)(1), (3) and (4) are irrelevant. Subsection (a)(2) provides a theory of transient jurisdiction by counties in which the corporation is present by virtue of its business activities or contacts. In this circumstance, and provided that the business contacts are more than incidental, a corporation can be compelled to defend itself. The controversy to be resolved here is whether Bryn Mawr's presence in Philadelphia County fits this requirement and, in a related fashion, whether it is subject to suit on causes of action unconnected in a substantial way with its activities there.

In 1927 this Court undertook the task of determining the modern conditions required for suing a foreign corporation transacting business in Pennsylvania. *Shambe v. Delaware and Hudson Railroad Company,* 288 Pa. 240, 135 A. 755 (1927). We concluded there that "Our State acts, however, as to both domestic and foreign corporations, require 'doing business' in the county where suit is brought before jurisdiction can be acquired." *Id.,* 288 Pa. at 246, 135 A. 755. (Citations omitted). *Shambe* traced the historical evolution of jurisdiction doctrine in Pennsylvania from the ancient rule requiring actual presence to the modern theory of transient jurisdiction which encompasses the realities of modern corporate practices involving far-flung economic penetration of markets beyond the forum where the corporation is located. In those latter circumstances, causes of action would lie where the corporation was "doing

business." Seeking to define that term, *Shambe* developed rules that these business contacts must be judged on the basis of their "quality" and "quantity." "A single act is not enough," while "each case must depend on its own facts." *Id.*, 288 Pa. at 246, 135 A. 755. "Quality of acts" means "those directly, furthering or essential to, corporate objects; they do not include incidental acts." Quantity means those acts which are "so continuous and sufficient to be general or habitual." In combined form, *Shambe* concluded that the acts of the corporation must be distinguished: those in "aid of a main purpose" are collateral and incidental, while "those necessary to its existence" are "direct." *Id.*, 288 Pa. at 248, 135 A. 755.

The words "regularly conducts business" first appeared in Rule 2179(a)(2) in 1944. *Monaco v. Montgomery Cab Company*, 417 Pa. 135, 208 A.2d 252 (1965). Seven years later, we held in *Law v. Atlantic Coast Line Railroad Company*, 367 Pa. 170, 79 A.2d 252 (1951), that prior case law on what amounted to "doing business" was applicable to the concept of "regularly conducts business" embodied in Rule 2179(a)(2). In *Monaco* and *Botwinick*, both 1965 cases, we adhered to the principles established by *Shambe*. That line of cases set forth a test for venue which, examining each case, was predicated upon the nature of the acts.

*Shambe* involved a New York company with an agent's office in Philadelphia to solicit freight business. We decided that mere solicitation of business was only incidental to the main purpose of the enterprise. In *Law*, venue in Philadelphia against a Virginia company whose freight cars merely travelled through Philadelphia was dismissed on the same grounds that this foreign corporation was not regularly doing business there. *Monaco*, on the other hand, affirmed venue in Philadelphia County in a suit for damages from an accident in Montgomery County because the cab company in Montgomery County transported passengers back and forth to Philadelphia to an extent as to fit the quantity-quality analysis.

Two other cases, however, appear at first blush to have established a second test for venue based on the theory of

substantial relationship. The first decision was *County Construction* in 1958 where we stated:

> We must consider, therefore, whether venue in Berks County can be sustained under the provisions of subsection 4 of P.R.C.P. 2179(a), which permits an action to be brought in a county in which there was a transaction or occurrence out of which the cause of action arose.
>
> This new and broad venue provision was drafted from the Illinois Code of Civil Practice by the Procedural Rules Committee and was first adopted in Pennsylvania in 1939 in the rules governing actions brought against partnerships. See P.R.C.P. 2130. Its purpose was to permit a plaintiff to institute suit against the defendant in the county most convenient for him and his witnesses and to assure that the county selected had a substantial relationship to the controversy between the parties and was thereby a proper forum to adjudicate the dispute.

142 A.2d at 13 (footnote omitted).

The second case, *Burdett Oxygen Company v. I.R. Wolfe and Sons, Inc.*, 433 Pa. 291, 249 A.2d 299 (1969), repeated this language:

> We find that distinction to be artificial and not in keeping with the rationale of Rule 2179, which is "to permit a plaintiff to institute suit against the defendant in the county most convenient for him and his witnesses and to assure that the county selected had a substantial relationship to the controversy between the parties and was thereby a proper forum to adjudicate the dispute." *County Construction Co. v. Livengood Construction Co.*, 393 Pa. 39, 44, 142 A.2d 9, 13 (1958). Whether a corporation is selling to customers or buying from suppliers is irrelevant to whether the county is convenient for plaintiff and his witnesses or has a sufficiently substantial relationship to the controversy so that it is a proper forum for adjudication.

249 A.2d at 302.

In this appeal, we are presented with two conflicting interpretations of the phrase "substantial relationship to

the controversy between the parties." Aside from fears of forum shopping, Appellant argues that *County Construction–Burdett* created a separate and distinct test for venue which deviated from the *Shambe–Law– Monaco* line of cases based on a quality-quantity analysis. Under Bryn Mawr's interpretation, this separate test would focus on the connection between the corporation's "acts" in Philadelphia County and the underlying cause of action. In the absence of this nexus, and failing to qualify under the quality-quantity analysis, venue could not be had in Philadelphia County.

By contrast, the Superior Court held that *Burdett's* language "relates to subdivision (a)(2) of Rule 2179 by requiring that the corporation which has been sued have sufficient connection to the county, rather than that the particular corporate acts which directly relate to the underlying cause of action have a sufficient nexus to the county." 550 A.2d at 1327.

In spite of the fact that *County Construction* and *Burdett* appear to be somewhat unclear, we hold that the Superior Court's interpretation is correct. "Substantial relationship" is nothing more than synonymous language for minimum contacts which, in turn, bears directly on the meaning of "regularly doing business." It furnishes a complimentary interpretation of the quality-quantity test and nothing more.[3] Subsection (a)(2) provides for general jurisdiction, while the remaining provisions of Rule 2179 form the basis of special jurisdiction covering the legal domicile and acts of the corporate enterprise.

Having rejected Bryn Mawr's contention on this point, we find, nevertheless, that venue was improper in Philadelphia County on the grounds that the hospital did not meet the quality-quantity test of our cases. We do so in keeping with our teaching that each case rests on its own facts. *Shambe*, 288 Pa. at 247, 135 A. 755.

**3.** At footnote 3, 249 A.2d at 302, *Burdett* pointed out that the Business Corporation Act of May 5, 1933, as amended Act of July 20, 1968, Act 216, § 54, 15 P.S. § 2011, interpreted "doing business" for jurisdictional purposes used language similar to Rule 2179(a)(2).

The heart of the Superior Court's ruling that venue was proper in Philadelphia County is its conclusion that the rotation of medical personnel between the hospital and Philadelphia's medical schools constitutes regularly doing business under Rule 2179(a)(2):

> The Pennsylvania Supreme Court has unequivocally established that a corporation "regularly conducts business" in the county in which the corporation obtains materials, goods, and supplies essential for the corporation to accomplish its corporate objectives. In the case before us, the "materials, goods and supplies" essential to the operation of Bryn Mawr as an institution providing quality medical care includes the care which its doctors who are participating in the "Jefferson–Bryn Mawr Education Program" are able to provide Bryn Mawr's patients. The long-standing relationship between Bryn Mawr and Philadelphia County medical schools/hospitals as well as the depth of interaction between those institutions with regard to their affiliation underscores the fact that the relationship exists to further the primary corporate goals of Bryn Mawr, and consequently constitutes a regular part of Bryn Mawr's "business."

550 A.2d at 1332–1333.

We disagree with this conclusion. The rotation and use of medical personnel is essentially an educational process which does not amount to the quality of business activity which we contemplated in *Shambe* and its progeny. Our conclusion would be different if, for example, Bryn Mawr established a branch clinic in Philadelphia where paying customers would be diagnosed or treated on the premises in Philadelphia, just as there can be no question that Bryn Mawr does business in Montgomery County. That is not the case on record. The relationship sponsored here is unique in the sense that it is predicated upon educational exchanges, thereby removing it from the characteristic quality of business contacts which we envision as being

encompassed by Rule 2179(a)(2).[4]

Nor are we convinced that the arrangements with the medical schools go beyond mere incidental contacts rather than being essential to Bryn Mawr. The hospital has its own permanent staff which alone would be capable of treating patients.

We stress the fact that medical enterprises engage in both educational and service activities. Our great teaching and research centers attract students and physicians from all corners of this State, this nation, and from around the world. Patients in need of treatment travel endlessly across varied boundaries in search of relief, and frequently hospitals furnish lifeflights without regard to political lines drawn on a map. We are mindful, as well, of the fact that the vast majority of our counties are rural, and of necessity the ill must journey to wherever the best treatment is available. The great medical centers located in our metropolitan areas perform advanced treatment, including transplant surgery on patients from Ohio to Texas to Saudi Arabia, often done in the context of teaching students and scientists who speak with accents foreign to the different regions of Pennsylvania. Even where the lifeflights are regular, or where educational programs are formalized, we have not anticipated, and we decline to do so now, that such contacts could form the bases of venue for legal action.

Finally, we find it to be patently evident that the mere purchase of hospital supplies from Philadelphia merchants cannot form a satisfactory rationale for conferring venue. It is equally clear that advertisements in Philadelphia's phone books and newspapers also fail to meet our standards for the exercise of venue. Mere solicitation of business in a particular county does not amount to conducting business. *Law,* 79 A.2d at 253.

4. The issue of *forum non conveniens* was not raised in this appeal or in the courts below. We do not address that issue except to point out that the trial court must find that the transfer of the case to another county is more convenient for both parties to the action or for the witnesses. *Nicolosi v. Fittin,* 434 Pa. 133, 135, 252 A.2d 700, 701 (1969).

We determine that venue was not proper in Philadelphia County and remand for proceedings not inconsistent with this opinion.

McDERMOTT, J., did not participate in the consideration or decision of this matter.

NIX, C.J., concurs in the result.