J-A27010-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| J.P., A MINOR, BY HIS PARENTS AND NATURAL GUARDIANS, AARON PINKSTON, KIMBERLY PINKSTON, AND AARON PINKSTON, AND KIMBERLY PINKSTON, IN THEIR OWN RIGHT | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : : | |
| | : | No. 1735 EDA 2020 |
| v. | : : : | |
| SHERMAN STREET SOCCER, LLC, ALL SPORTS ENTERPRISES INC, AND D'HUY ENGINEERING INC | : : : | |

Appeal from the Order Entered September 2, 2020
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  No. 200400802

BEFORE:  PANELLA, P.J., DUBOW, J., and McCAFFERY, J.

MEMORANDUM BY PANELLA, P.J.:               **FILED FEBRUARY 11, 2022**

J.P., a minor, through his parents Aaron and Kimberly Pinkston, and

Aaron and Kimberly Pinkston, in their own right (collectively "the Pinkstons"),

appeal from the order finding venue was improper in Philadelphia County and

transferring venue to Lehigh County.[1] We affirm.

---

[1] In the order, the trial court also indicated that venue would be proper in Chester County or Northampton County.

On January 25, 2020, the Lou Ramos Center in Allentown, Lehigh County hosted a futsal[2] tournament. While playing in a game, J.P. tripped over side court netting on the floor surface and fell to the ground, sliding knee first into an unprotected concrete column base, resulting in numerous injuries. The Pinkstons, who resided in West Chester, Pennsylvania, filed a complaint sounding in negligence in Philadelphia County, naming Sherman Street Soccer, LLC, All Sports Enterprises, Inc., and D'Huy Engineering, Inc., as the defendants. The Pinkstons claimed that venue was proper in Philadelphia County because All Sports and D'Huy regularly conducted business there.[3]

Relevantly, All Sports, which designed and constructed the futsal courts at the Lou Ramos Center, has its principal place of business in Exton, Pennsylvania (Chester County). Notably, since 2015, All Sports completed seven projects in Philadelphia County, but the work was performed by subcontractors and not All Sports' employees. Further, D'Huy, an engineering consulting firm, designed the fit out for the futsal courts. D'Huy has its principal place of business in Bethlehem, Pennsylvania (Lehigh County). D'Huy

---

[2] We note for purposes of context only that futsal is a term commonly used to describe a five-on-five game like soccer, but played indoor, with a smaller ball, and retaining boundaries instead of using walls. *See* https://en.wikipedia.org/wiki/Futsal#Summary_of_rules, last accessed 1/25/2022.

[3] The Pinkstons did not argue that Sherman Street Soccer, which owns and operates the Lou Ramos Center and has its principal place of business in Allentown, Pennsylvania, regularly conducted business in Philadelphia County.

also has two regional offices, one located in Ambler, Pennsylvania (Montgomery County) and the other in Wilmington, Delaware. Additionally, between 2015 and 2020, D'Huy derived a small percentage of revenue from consulting work in Philadelphia County but did not act as a project manager on any project.

All Sports filed preliminary objections, raising various claims, including improper venue in Philadelphia County. Sherman Street also filed preliminary objections but did not raise a venue challenge. D'Huy did not file preliminary objections, and instead filed an answer, wherein it denied all allegations that it conducts business in Philadelphia County. Following discovery, the trial court granted All Sports' preliminary objections regarding its venue challenge and transferred venue to Lehigh County. The trial court also stated that venue would be proper in Chester or Northampton County, and that the Pinkstons could decide where to pursue their action. The remainder of the parties' preliminary objections were dismissed without prejudice. This appeal followed.[4]

On appeal, the Pinkstons raise the following questions for our review:

1. Did the trial court err as a matter of law, and thereby abuse its discretion, in holding that D'Huy Engineering, Inc. … does not regularly conduct business in Philadelphia County, by focusing unduly on percentage of revenue and by overlooking the

---

[4] This Court has jurisdiction to consider this appeal under Pa.R.A.P. 311(c) ("An appeal may be taken as of right from an order in a civil action or proceeding changing venue ….").

- 3 -

continuous, ongoing and regular engineering work performed in Philadelphia County?

2. Did the trial court err as a matter of law, and thereby abuse its discretion, in holding that All Sports Enterprises, Inc. … does not regularly conduct business in Philadelphia County, by focusing unduly on percentage of Philadelphia projects and by overlooking the continuous, ongoing and regular construction-work performed in Philadelphia County?

Brief for Appellants at 4.

We review an order granting preliminary objections asserting improper venue for an abuse of discretion. *See Hangey v. Husqvarna Prof'l Products, Inc.*, 247 A.3d 1136, 1140 (Pa. Super. 2021) (*en banc*). "A [p]laintiff's choice of forum is to be given great weight, and the burden is on the party challenging the choice to show it was improper." *Id.* (citation omitted). "[I]f there exists any proper basis for the trial court's decision to grant the petition to transfer venue, the decision must stand." *Id.* (citation omitted).

We will address the Pinkstons' claims together. Specifically, the Pinkstons argue that the trial court abused its discretion in transferring venue to Lehigh County, because D'Huy and All Sports regularly conduct business in Philadelphia County, and thus, venue was proper there. *See* Brief for Appellants at 20, 31.

Regarding D'Huy, the Pinkstons contend that the trial court improperly focused exclusively on the percentage of revenue D'Huy generated from Philadelphia-based projects in finding that D'Huy did not have the quantity of

contacts with Philadelphia County to establish venue. *See id.* at 25-29. The Pinkstons maintain that D'Huy's engineering services were being utilized on a regular basis in Philadelphia County. *See id.* at 27, 29. The Pinkstons further assert that D'Huy had quality contacts with Philadelphia County, noting that D'Huy was certified and licensed by the City of Philadelphia as a Minority Business Enterprise; D'Huy indicated, through its social media sites, corporate newsletters, corporate website, and news articles, that it conducted substantial business in Philadelphia; and D'Huy provided its core business of consulting services in Philadelphia. *See id.* at 22-25; *see also id.* at 23 (arguing that D'Huy's admissions of work in Philadelphia do not constitute incidental advertising). The Pinkstons also claim that D'Huy's failure to file preliminary objections in the instant case established that it had no intention of disputing venue in Philadelphia County. *See id.* at 31. Finally, the Pinkstons argue that in *Buccafuri v. Clark Artistic Iron, Inc. et al.*, Phila C.C.P. Docket No. 190903599, a different judge in Philadelphia County entered an

order finding that D'Huy regularly conducts business in Philadelphia County.[5] *See id.* at 29-30.[6]

Likewise, the Pinkstons argue that the trial court improperly relied on the percentage of total projects as the principal basis for concluding that All Sports did not regularly conduct business in Philadelphia County. *See id.* at 31-32, 37. The Pinkstons highlight that All Sports derived hundreds of thousands of dollars of revenue from Philadelphia County through seven projects within the context of its business in Philadelphia between 2015 and 2019, directed and oversaw work in Philadelphia County, and would accept work that became available in Philadelphia. *See id.* at 32-37. The Pinkstons assert that such evidence confirms that All Sports performs regular business in Philadelphia in sufficient quality and quantity to render venue proper. *See id.* at 33, 38.

---

[5] The Pinkstons have included the order in question in their brief. While D'Huy is listed as a defendant in that action, the order itself states the following:

> AND NOW, this 19th day of October 2020, upon consideration of the preliminary objections of defendant Skepton Construction, Inc. to plaintiffs amended complaint, and any response, it is hereby ORDERED that the preliminary objections are OVERRULED. Skepton Construction, Inc. shall file an answer to plaintiffs amended complaint within 20 days of the docketing of this order.

Order, 10/19/20.

[6] The Pennsylvania Association for Justice ("PAJ") has filed an *amicus* brief in support of the Pinkstons. The PAJ largely echoes the Pinkstons' brief and argues that venue is proper in Philadelphia County because D'Huy regularly conducts business there.

A civil action may be brought against all defendants in any county in which venue may be laid against any one of the defendants "under the general rules." Pa.R.C.P. 1006(c)(1). Rule 2179, which governs venue in cases against corporate entities, states in relevant part, that "a personal action against a corporation or similar entity may be brought in and only in . . . a county where it regularly conducts business[.]" Pa.R.C.P. 2179(a)(2). "[I]n the venue context, regularly does not mean principally, and a defendant may perform acts regularly even though these acts make up a small part of its total activities." *Hangey*, 247 A.3d at 1141 (citation and quotation marks omitted). "In determining whether venue is proper under this rule, courts employ a quality-quantity analysis." *Id.* (citation and quotation marks omitted); *see also Zampana-Barry v. Donaghue*, 921 A.2d 500, 503 (Pa Super. 2007) ("A business entity must perform acts in a county of sufficient quality and quantity before venue in that county will be established."). "The term 'quality of acts' means those directly, furthering, or essential to, corporate objects; they do not include incidental acts." *Hangey*, 247 A.3d at 1141 (citation omitted). "To satisfy the quantity prong of this analysis, acts must be sufficiently continuous so as to be considered habitual." *Id.* (citation and quotation marks omitted). Moreover, in addressing the quantity prong, this Court explained the significance of the percentage of a company's business conducted in the county as follows:

> The percentage of a company's overall business that it conducts
> in a given county, standing alone, is not meaningful and is not

determinative of the "quantity" prong. Each case turns on its own facts, and we must evaluate evidence of the extent of a defendant's business against the nature of the business at issue. A small or local business may do all of its work in just a few counties or even a single one, while a large business may span the entire nation. Indeed, the percentage of sales a multi-billion-dollar company makes in a particular county will almost always be a tiny percentage of its total sales. Courts thus should not consider percentages in isolation. Rather, courts must consider all of the evidence in context to determine whether the defendant's business activities in the county were regular, continuous, and habitual.

*Id.* at 1142.

Here, the trial court summarized the evidence of contacts by D'Huy and All Sports with Philadelphia County and its legal conclusions as follows:

> The undisputed facts are, since 2015, All Sports has entered into seven (7) business contracts to conduct work in Philadelphia County. [] All Sports, in that same time, took on approximately one hundred fifty (150) total projects…. [T]he Philadelphia projects amounted to a mere 1.67% of All Sports total [revenue] throughout the years 2015 to 2020. Those contracts provided the following revenues to All Sports: 2015 – Grandview Condo Association $13,350; 2015 – The Shirt Corner $15,500; 2017 – Versailles Apartments $36,752; 2018 – The Phield House $285,868; 2018 – Schlessinger Table Tennis $7,942; 2019 – Pan Am Charter $68,139; 2019 – Elite Sports Factory $74,400.

> Furthermore, all of the physical work done for the All Sports projects in Philadelphia was done by subcontractors, not employees of All Sports. And the approximate amount of days those subcontractors were on site were approximately 30 to 35 days total…. Seven contracts over the course of five years [are] not the type of "continuous and sufficient" contacts that rise to the level of regularly conducting business. Furthermore, the underlying incident happened in January of 2020 and the instant lawsuit was filed on April 17, 2020…. While acknowledging the COVID-19 pandemic may have had an impact on All Sports' business, it would be inappropriate to speculate as to what might have occurred if not for the pandemic.

- 8 -

This Court can only look at the facts as presented, which indicate All Sports has only had seven projects in Philadelphia, over a five[-]year period, which took only 30-35 days total to complete. Furthermore, only two of those projects occurred in 2019, the year leading up to the underlying matter. [The Pinkstons were] unable to demonstrate All Sports conducts regular and substantial business in Philadelphia County at the time of the underlying accident. Therefore, venue, as to All Sports, is inappropriate in Philadelphia County.

D'Huy has a principal place of business in Bethlehem, Pennsylvania, which is in Lehigh County[,] Pennsylvania. D'Huy also has two regional offices, one located in Ambler, Pennsylvania (Montgomery County) and the other in Wilmington, Delaware…. [The Pinkstons] reference[] other statements made by D'Huy on their website, social media feeds, and corporate newsletters in which they reference doing work in Philadelphia County. However, mere advertisements or statements cannot constitute the quality and quantity of contact needed to support proper venue. [***Purcell v. Bryn Mawr Hosp.***, 579 A.2d 1282, 1287 (Pa. 1990).]

A trial court must distinguish between collateral acts, which merely aid the main purpose of the corporation, and direct acts, which are necessary to the existence of the corporation. ***Id.*** at 1285. The direct actions taken by D'Huy include business contracts for consulting work [in] Philadelphia. M. Arif Fazil, the President of D'Huy, gave testimony in which he provided the total revenue derived from projects in Philadelphia County from 2015 until 2020 as well as an explanation of the nature of D'Huy's business.

D'Huy is a "consulting engineering firm" which "oversee[s] projects on behalf of the client as the owner's rep. They're basically agency style projects, management, not at risk, agency styled as a professional representative for the owner." Fazil Deposition at 10. Due to the nature of their business largely revolving around consulting, D'Huy is able to do most of their work from their offices in Bethlehem, P[ennsylvania], absent the occasional site visit to Philadelphia. Furthermore, D'Huy is actually providing consulting for other engineering companies who have the contract to work for the ultimate client. For example, although it is listed [that] D'Huy does business with the Philadelphia Water Department, D'Huy is actually contracted to do business with an

entity named Arcadis. D'Huy does not serve as a "project manager" for any projects in Philadelphia.

Over the course of the past six years, D'Huy consulted on roughly twenty projects in Philadelphia. The projects in Philadelphia, in which D'Huy served as a consultant for another engineering company who had a contract with a Philadelphia based client, have provided minimal revenue for D'Huy. In 2015, out of $7,280,654.38 of D'Huy's revenue, $56,403 came from Philadelphia based projects, amounting to .774% of total revenue. In 2016, out of $8,582,159.52 of D'Huy's revenue, $44,202.36 came from Philadelphia based projects, amounting to .5150% of total revenue. In 2017, out of $10,650,090.15 of D'Huy's revenue, $37,828.54 came from Philadelphia based projects, amounting to .3552% of total revenue. In 2018, out of $10,465,841.35 of D'Huy's revenue, $158,838.18 came from Philadelphia based projects, amounting to 1.5177% of total revenue. In 2019, $12,247,607.35 of D'Huy's revenue, $179,865.35 came from Philadelphia based projects, amounting to 1.4686% of total revenue. Finally, in 2020, out of $637,275.01 of D'Huy's revenue, $4,529.23 came from Philadelphia based projects, amounting to .9673% of D'Huy's total revenue. When considering the type of work D'Huy conducts and the small percentage of revenue derived from work in Philadelphia, th[e trial c]ourt did not abuse its discretion in determining D'Huy does not regularly conduct business in Philadelphia….

Th[e trial c]ourt notes there is no bright-line percentage cutoff for the quantity test. Each case must be determined on its own unique facts and circumstances, not on an arbitrary numerical limit. The facts show a clear absence of regularity in which either All Sports or D'Huy conducted business in Philadelphia…. Thus, venue was properly transferred to Lehigh County.

Trial Court Opinion, 2/24/21, at 5-8 (emphasis, footnotes, and some citations and quotation marks omitted).

Here, the trial court did not rely exclusively on evidence of the percentage of All Sports' or D'Huy's business that occurred in Philadelphia County when addressing the quantity prong of the regularly-conducts-

business analysis. Indeed, the trial court highlighted that All Sports' projects in Philadelphia were done by subcontractors, not its employees over a 5-year period; All Sports had no projects in Philadelphia in 2020, the year that J.P. suffered his injuries; and D'Huy is a consulting engineering firm that oversees projects on behalf of its clients but does not serve as a project manager on any projects in Philadelphia. Furthermore, All Sports and D'Huy do not maintain an office in Philadelphia, have any employees in Philadelphia, and do not pay taxes in Philadelphia. Thus, in addition to the percentage of business conducted in Philadelphia County, the trial court cited other evidence to support its determination that acts by All Sports and D'Huy were not continuous and habitual in Philadelphia County.

There also exists a proper basis for the trial court's finding that All Sports and D'Huy did not have quality contacts with Philadelphia County, as any visits by D'Huy or All Sports to Philadelphia, as well as D'Huy's statements on its website and corporate newsletters, were incidental acts, and not direct acts. Neither company was involved in direct action in Philadelphia. D'Huy's visits were brief and essentially perfunctory. Moreover, the Pinkstons do not establish that D'Huy's licensure as a Minority Business Enterprise in Philadelphia, alone, or in conjunction with the above facts, evidence quality contact with Philadelphia County. Therefore, reviewing the specific facts of the instant case, we conclude that the trial court did not abuse its discretion in sustaining All Sports preliminary objections raising improper venue on the

basis that none of the named defendants regularly conducted business in Philadelphia County.

Additionally, the fact that D'Huy did not file preliminary objections in this matter does not waive the venue issue on behalf of the remaining defendants or preclude All Sports from raising the issue. *See Schultz v. MMI Prod., Inc.*, 30 A.3d 1224, 1229 (Pa. Super. 2011) (holding that one defendant's failure to object to improper venue does not have the effect of establishing proper venue for the remaining defendants, as it would permit one defendant to unilaterally deprive another party of an opportunity to object to an improper forum).

Finally, the Pinkstons have not demonstrated that the *Buccafuri* case has any applicability to the instant case. Notably, the cited *Buccafuri* order does not provide any basis for the trial court's decision and does not affirmatively state that D'Huy regularly conducts business in Philadelphia. Indeed, D'Huy is only one of multiple defendants listed in the docket sheets; we have no way to discern what defendant's or defendants' contacts were ruled upon. It is entirely possible, on this record, that another defendant in that matter had significantly greater contacts with Philadelphia than D'Huy.

Based upon the foregoing, we affirm the trial court's order finding venue was improper in Philadelphia County.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/11/2022